A95A2193. ALLEN v. ROSCOE WESTON MOTELS GEORGIA, INC.
(469 SE2d 492)

RUFFIN, Judge.

Susana Allen sued Roscoe Weston Motels Georgia, Inc. d/b/a Weston Savannah Motel and Convention Center ("Weston") for injuries she allegedly sustained when she fell at Weston's motel. The trial court granted Weston's motion for summary judgment and Allen appealed. For reasons which follow, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in that light, the facts in this case show that at approximately 9:30 on the evening of the accident, Allen was walking through a motel breezeway while returning to her room. She described the breezeway as "very dark" and stated that she "couldn't see anything." And, although there was a light in the breezeway, Allen stated it was a very pale, dim light that did not illuminate the area. Allen testified that immediately before she fell, she was paying attention to where she was walking and that she "was trying to get into the middle of the [breezeway] to avoid [some] stairs and . . . was looking to go through the [breezeway] to go to [her] room." As Allen walked through the breezeway, she stepped on a raised area of the pavement, twisted her foot, lost her balance, and fell, sustaining the injuries for which she sued. According to Allen, there was less than a one inch rise in the level of the pavement at the location where she fell. Although the rise in the pavement was painted with a yellow line, Allen stated that she

did not see the line before she fell and described the line as "yellow but very pale," "almost invisible," and "faded away." Allen stated that she never walked through the breezeway before her fall.

In granting Weston's motion, the trial court concluded that Allen and Weston had equal knowledge regarding the raised area and that Allen was not looking where she was walking when she fell. In reaching this conclusion, the court found that earlier in the evening before her fall, Allen "had passed similar raised pavement areas without harming herself . . . [and that w]hile there is some dispute over the amount of light in the breezeway on the evening [Allen] fell, there is no dispute over the fact that the breezeway was lit." Finally, the court found that although the parties disagreed as to the brightness of the yellow paint, there was no disagreement that the paint was present.

"[U]neven pavement is a static condition which alone is not dangerous until someone steps on or in it. It is common knowledge that such defects often exist in pavement . . . and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a static defect, the owner or occupier of the premises is justified in assuming that a visitor will see it and realize the risk involved." (Citations and punctuation omitted.) *Papera v. TOC Retail*, 218 Ga. App. 777, 778 (3) (463 SE2d 61) (1995).

In this case, there is a factual dispute concerning whether the darkness interfered with Allen's ability to see the rise in the pavement. Although the trial court correctly found that there was no dispute that there was a light in the breezeway, the question of whether that light was sufficient to illuminate the rise in pavement is "a matter which the trial court should have submitted to the jury." *Hatcher v. City of Albany*, 147 Ga. App. 843, 844 (1) (250 SE2d 537) (1978). See also *Sacker v. Perry Realty Svcs.*, 217 Ga. App. 300, 301 (457 SE2d 208) (1995); *Kreiss v. Allatoona Landing*, 108 Ga. App. 427 (2) (a) (133 SE2d 602) (1963). As noted above, Allen maintained that the light did not illuminate the area at all. Weston's response showing that there was a working light in the area did not dispute Allen's testimony that the light did not illuminate the area.

Likewise, a factual issue remains concerning whether the yellow paint was sufficient to alert Allen as to the rise in the pavement. Allen testified that it was faded to the point that it was not visible to her before she fell. Weston did not dispute that the paint had faded but rather presented deposition testimony from one employee who stated that the yellow markings were repainted twice a year. Another employee stated that she did not recall any yellow markings in the breezeway. The mere fact that the paint was barely visible to Allen after her fall, when her face was perhaps only inches away from the pavement, does not establish that it was visible to her while she walked through the breezeway.

It also makes no difference that Allen had earlier passed similar raised pavement areas without harming herself. "It is true that a person who has successfully negotiated a dangerous condition on a previous occasion is presumed to have knowledge of it and cannot recover for resulting injuries. [Cit.] However, there is no evidence [Allen] ever negotiated this particular hazard. . . . 'It is a plaintiff's knowledge of the *specific* hazard which precipitates the slip and fall which is determinative, not merely [her] knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which [she] observes and avoids.' . . . [Cit.]" (Emphasis in original.) *Sacker*, supra at 301-302.

Finally, the undisputed facts do not show that Allen failed to watch where she was walking at the time that she fell. Although she testified that she was looking for her room, she also testified that she was paying attention to where she was walking and that she "was trying to get into the middle of the [breezeway] to avoid [the] stairs. . . ." Looking for one's motel room and watching where you are walking are not mutually exclusive. It follows that there remains a jury question as to whether Allen " 'use[d] her eyesight for the purpose of determining any discernible obstruction or defect in her path.' . . . [Cit.]" *Papera*, supra at 779. See also *Sacker*, supra at 302.

For all the foregoing reasons, we conclude that the trial court erred in granting summary judgment to Weston.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 29, 1996.

*Don Smart*, for appellant.
*Freeman & Hawkins, Alan F. Herman, B. Rose Miller, Oliver B. Dickins, Jr.*, for appellee.