A97A1067. WHATLEY v. NATIONAL SERVICES INDUSTRY, INC.
et al.
(492 SE2d 343)

BEASLEY, Judge.

Joann Whatley tripped on a wrinkled mat located at an unlit entrance to Max Fuller's Amoco Food Store. National Services Industry, Inc. ("NSI") provided the mat to Fuller. Whatley sued Fuller and NSI for negligence, and the court granted summary judgment to both. We reverse in part and affirm in part.

Construed in favor of Whatley, the evidence shows that Fuller contracted with NSI for NSI to provide commercial mats to Fuller's store, which NSI replaced with freshly laundered mats each week. The 3' x 5' mat for the store entrance was placed lengthwise on the raised sidewalk immediately outside the door so that about one foot lay on the sidewalk and about two feet lay on the wheelchair ramp leading up to the sidewalk. Between the sidewalk and the ramp was a discontinuity, which the mat covered. The mat was not fastened down.

At about 9:45 p.m. on the evening of October 2, 1993, Whatley

was a passenger in a car that stopped for gas at Fuller's store where she had not been before. She went in to make a purchase. As she ascended the ramp at the entrance, her right foot, clad in a tennis shoe, caught on the wrinkled-up edge of the mat, and she fell forward into the steel door frame, sustaining serious injuries.

Whatley testified that although she saw the ramp and mat as she approached, she did not notice anything hazardous about them, for it was dark outside and the lights over the door entrance were not on. Her companions confirmed that the area near the store entrance was very dark. One companion came to assist Whatley and testified that when she stooped down to help Whatley, she saw horizontal wrinkles throughout the mat which were not visible from a standing position.

1. Whatley contends that because there are issues of material fact, the court erred in granting summary judgment to proprietor Fuller and mat-provider NSI. We will first address Fuller.

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. "In general, 'negligence issues are susceptible to summary adjudication only in plain, palpable and indisputable cases; the evidence must be construed most favorably to the party opposing the motion, and he must be given the benefit of all favorable inferences and reasonable doubts which may arise from the evidence. Summary judgment may be granted only where, construing all inferences against the movant, it yet appears without dispute that the case can have but one outcome and that outcome must be in the movant's favor.' [Cit.]" *Sykes v. Colony Regency Partners, Ltd.*, 226 Ga. App. 804, 806 (487 SE2d 408) (1997).

Alleging that Fuller negligently maintained the mat, Whatley presented evidence that it was wrinkled and posed a hazard to invitees. Fuller himself testified that the mat occasionally would get wrinkled up, and that he instructed his employees, who could see the mat from the cashier's desk, to look for and straighten out any wrinkles. Because the lights over the mat were not on, the area around the mat was dark, which prevented Whatley from discerning the danger.

This evidence precludes summary judgment in favor of Fuller. Floor mats "subject to periodic folding, bunching, rolling, and shifting" can constitute hazards for which landowners may be liable. *Jet Food Stores v. Kicklighter*, 226 Ga. App. 552 (487 SE2d 120) (1997). See *Best v. Dublin Eye Assoc., P.C.*, 188 Ga. App. 225 (372 SE2d 495) (1988) (landlord liable for placement and maintenance of defective mat). Poor lighting along a path intended for use by invitees can

make it difficult for an invitee to discern a hazard. *Sykes*, supra (nonworking light fixture prevented plaintiff from seeing sidewalk construction); *Brennan v. The Freight Room*, 226 Ga. App. 531 (487 SE2d 109) (1997) (poorly illuminated walkway prevented plaintiff from seeing curb and drop in elevation); *Sacker v. Perry Realty Svcs.*, 217 Ga. App. 300 (457 SE2d 208) (1995) (poor lighting in parking lot prevented plaintiff from seeing out-of-place railroad tie).

" 'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.' [Cit.]" *Brennan*, supra, 226 Ga. App. at 533 (1). See Restatement (Second) of Torts, § 343 (1965). "The principle of equal or superior knowledge applies to static defective or dangerous conditions on property. [Cit.]" *Jet Food Stores*, supra, 226 Ga. App. at 553 (1); *Newell v. Great A & P Tea Co.*, 222 Ga. App. 884, 885 (2) (476 SE2d 631) (1996). The defendant must show that no genuine issue of fact exists as to its lack of actual or constructive knowledge of the hazard. *Hilsman v. Kroger Co.*, 187 Ga. App. 570, 571 (2) (370 SE2d 755) (1988).

Fuller's liability could be based on constructive knowledge alone. *Newell*, supra, 222 Ga. App. at 886. "Constructive knowledge may be established by showing either that: (1) an employee of the proprietor was in the immediate area of the hazard and had the means and opportunity to easily see and remove it; or (2) the proprietor failed to exercise reasonable care in inspecting the premises. [Cit.]" Id.

Fuller admitted the mat was visible to his employees at the cashier's desk. They were responsible not only for straightening it out when wrinkled, but also for activating the lights over the mat when it became dark.

There is also evidence of constructive knowledge under the reasonable inspection prong. To show the evidence precluded a finding of negligence, Fuller had to establish that he and his employees exercised reasonable care in inspecting the premises, such as by compliance with reasonable inspection procedures. *Newell*, supra, 222 Ga. App. at 886. But he testified that there was no regular inspection procedure other than employees generally inspecting the premises at shift changes every eight hours. Even these infrequent inspections followed no written checklist or guidelines, and there is no record kept of them. Fuller had no specific recollection of any inspection done on the day in question. Such evidence fails to require a conclusion of due care. See *Newell*, supra, 222 Ga. App. at 885-887 (2) (no records of inspections and no recollection of inspections that day); *Burke v. Bi-Lo*, 212 Ga. App. 115, 117 (441 SE2d 429) (1994) (no recollection of inspections on evening in question); *Boss v. Food Giant*,

193 Ga. App. 434, 435-436 (388 SE2d 37) (1989) (no recollection of any inspection on day in question).

Fuller argues that because no one had fallen previously, he could have no actual or constructive knowledge of the danger. Yet he testified that he had instructed his employees to smooth out mat wrinkles, which they had done on occasion. We rejected this argument in *Brennan.* "The fact that there had been no prior incidents or complaints concerning the lighting does not absolve appellees of liability. An occupier of premises is under a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises." (Citations and punctuation omitted.) *Brennan,* supra, 226 Ga. App. at 533 (1). A prior fall is not a necessary precursor to knowledge that a wrinkled mat poses a hazard.

The question as to Whatley's knowledge is whether she knew of the mat's wrinkled condition, not merely the lighting. Id. She was a newcomer, the entrance was dark, and the wrinkles were obscured. See id. (change in elevation obscured due to poor lighting); *Sykes,* supra, 226 Ga. App. at 805 (darkness and shadows obscured sidewalk construction); *Allen v. Roscoe Weston Motels Ga.,* 220 Ga. App. 402, 403 (469 SE2d 492) (1996) (poor lighting obscured one-inch rise in pavement). Contrary to Fuller's contention, Whatley's general awareness of the ramp and mat does not mean she could see the wrinkles. One witness testified the wrinkles were visible only from a stooping position. See *Hillard v. Fed. Paper Bd. Co.,* 218 Ga. App. 699, 700 (1) (463 SE2d 494) (1995) (hazard not visible from where plaintiff was standing). Cf. *Newell,* supra (tear in mat only visible if plaintiff stared at the mat). "An invitee is not required to look for defects continuously and without interruption always. [Cits.]" *Anderson v. Turton Dev.,* 225 Ga. App. 270, 272 (1) (483 SE2d 597) (1997). What constitutes a reasonable lookout is a question of fact for the jury. Id.

Citing *Hosp. Auth. of Ben Hill County v. Bostic,* 198 Ga. App. 500 (402 SE2d 103) (1991), and *Crenshaw v. Hogan,* 203 Ga. App. 104 (416 SE2d 147) (1992), Fuller counters that "where there is nothing to obstruct or interfere with one's ability to see a static condition, the owner or occupier of the premises is justified in assuming that the visitor will see it and realize the risk involved." But darkness interferes with one's ability to see and distinguishes this type of case on this ground. *Marlowe v. Cabe,* 207 Ga. App. 764, 765-766 (429 SE2d 151) (1993). See *Newell,* supra, 222 Ga. App. at 885 (defect must be *"readily discernible"* (emphasis in original)).

Fuller also argues that Whatley failed to exercise ordinary care because she approached the ramp from the side or corner instead of directly. Pictures show that Fuller intended customers to approach

from all angles.

The court erred in granting summary judgment to Fuller.

2. But NSI was properly awarded summary judgment. Whatley claims that NSI negligently placed the mat over a discontinuity in the pavement, negligently placed the mat in an area trafficked by vendors with carts (which caused the mat to wrinkle), and negligently failed to warn Fuller of the dangers associated with placement of the mat there.

There must be evidence that the failure to warn proximately caused the accident. *Powell v. Harsco Corp.*, 209 Ga. App. 348, 349-350 (2) (433 SE2d 608) (1993). Fuller testified he and his employees were fully aware of the propensity of the mat to wrinkle because of vendors' carts and other circumstances. A further warning to them would have been superfluous.

Nor did the placement of the mat on the discontinuity cause the accident. Because Whatley tripped on the edge of the mat as she ascended the ramp, the discontinuity at the end of the ramp had nothing to do with her fall.

Finally, NSI is not liable for the placement of the mat in an area trafficked by vendors with carts. Fuller directed NSI where to place it. Where an independent contractor or supplier properly executes the directions of the owner, only the owner, not the contractor or supplier, may be liable for injury to a third party resulting therefrom. See *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990); *Russell v. Cynwid Investments*, 142 Ga. App. 410, 411 (236 SE2d 147) (1977). Not applicable here are the exceptions: where the completed work is inherently dangerous, a nuisance per se, or so defective so as to be imminently dangerous. *David Allen Co.*, supra.

*Judgment affirmed in part and reversed in part. Smith, J., concurs. McMurray, P. J., concurs fully in Division 1 and concurs in the judgment only in Division 2.*

DECIDED SEPTEMBER 29, 1997.

*King & Croft, Terrence L. Croft, Charlotte H. Beltrami*, for appellant.

*McClain & Merritt, M. David Merritt, William S. Sutton*, for appellees.