**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 31, 2022**

# In the Court of Appeals of Georgia

A22A0878. BALLARD v. BILTMORE HOUSE CONDOMINIUM
    ASSOCIATION, INC.

PHIPPS, Senior Appellate Judge.

Biltmore House Condominium Association, Inc. (the "Association") sued Natasha Ballard to recover delinquent condominium assessments, late fees, interest, attorney fees, and costs associated with her ownership of a condominium, and it sought an order of judicial foreclosure. Following discovery, the trial court (i) granted summary judgment to the Association on its claim for delinquent assessments, late fees, and interest, (ii) issued an order of judicial foreclosure because the Association's lien against Ballard's condominium exceeded $2,000, and (iii) denied summary judgment on the Association's claim for attorney fees and costs because the court determined that questions of fact exist as to whether they were reasonable. Ballard

appeals, challenging the grant of partial summary judgment to the Association. Because the record establishes that disputed issues of fact remain that are material to the resolution of each of the Association's claims against Ballard, we reverse.

Viewing the evidence in the light most favorable to Ballard as the nonmoving party, *JPMorgan Chase Bank, N.A. v. Cronan*, 355 Ga. App. 556, 559 (845 SE2d 298) (2020), the record shows that Ballard is the owner of a condominium unit in the Biltmore House Condominium development. Ballard's condominium is subject to the Declaration of Condominium for Biltmore House (the "Declaration"). As relevant to this appeal, Section 10 of the Declaration provides that the Association has the authority to levy assessments against unit owners and that the amounts assessed, along with charges, interest, costs, and "reasonable attorney's fees actually incurred" shall be a continuing lien upon the unit and "the personal obligation" of the unit owner. The Declaration also authorizes the Association to impose late charges and interest in cases of delinquent payments.[1] And, Section 10 (c) (ii) provides that "[i]f part payment of assessment and related charges is made, the amount received may be

---

[1] Pursuant to Section 10 (c), "All assessments and related charges not paid on or before the due date shall be delinquent, and the [condominium owner] shall be in default."

2

applied first to costs and attorney's fees, then to late charges, then to interest, then to delinquent assessments, and then to current assessments."

In February 2015, the Association sued Ballard for past due condominium assessments and related charges, and it requested an order of judicial foreclosure pursuant to OCGA § 44-3-109 (c) because, according to the Association, its lien for such charges exceeded $2,000.[2] In response, Ballard filed an answer and counterclaim and alleged, among other things, that the Association charged her "unreasonable fines and attorney's fees." In July 2020, following discovery, the Association moved for summary judgment on all claims. In support of its motion, the Association offered the affidavit of its property manager, who was familiar with the Association's Declaration, related governing documents, and the records of Ballard's account. According to the property manager, Ballard owed $41,408.47 in delinquent assessments, $3,026.17 in late fees, and $10,603.29 in interest through June 30, 2020. The property manager based her statements on an account ledger attached to her

[2] OCGA § 44-3-109 establishes the procedure for the creation and foreclosure of a lien for assessments by a condominium owners' association against a delinquent condominium owner and stipulates, in subsection (c), that "[n]o foreclosure action against a lien . . . shall be permitted unless the amount of the lien is at least $2,000.00."

affidavit. As stated in the ledger, the Association charged Ballard for assessments, special assessments, late fees, and interest starting in 2011 and continuing through 2020. Ballard was also charged for legal fees and costs incurred by the Association during the same time frame. The charges appear to be dated when they were incurred. Ballard's payments are likewise reflected in the ledger, and the payments appear to be dated when they were received. In addition, the Association filed the affidavit of its legal counsel and attached the firm's billing statements for Ballard's account to show that the Association incurred $50,824.07 in attorney fees and litigation expenses related to her account.[3] Because its lien against Ballard's condominium allegedly exceeded $2,000, the Association asked the court to enter an order of judicial foreclosure. See OCGA § 44-3-109 (c).

Ballard responded to the Association's motion and argued that the amounts alleged were disputed, inaccurate, or unreasonable. Specifically, Ballard contended that (i) she paid, or attempted to pay, her condominium assessments, but the Association failed to properly account for her payments — converting charges for

[3] According to the Association's legal counsel, the Association's collection efforts in regard to Ballard were " particular[ly] complex because, during the process, [Ballard] filed two Chapter 13 bankruptcy cases . . . , which caused the Association to incur additional attorney's fees in addition to the usual and customary fees" for this type of collection lawsuit.

attorney fees and interest into charges for assessments, (ii) the Association, at various times, assessed late fees and interest on her timely assessment payments, and (iii) contrary to OCGA § 44-3-109 (b) (3), the Association's attorney fees were not reasonably incurred because the Association engaged in unnecessary and costly litigation and certain charges were not connected to Ballard's obligation to pay assessments.[4] Because she claimed that the amounts sought by the Association were inaccurate or invalid, Ballard argued that the Association was not entitled to an order of judicial foreclosure.

The trial court largely disagreed and found that the Association's allocation of Ballard's payments was consistent with the Declaration.[5] According to the trial court, the Association presented evidence that established, as a matter of law, that Ballard was personally responsible for $41,408.47 in delinquent assessments, $3,026.17 in

---

[4] As relevant here, OCGA § 44-3-109 (b) (3) establishes that — to the extent the condominium documents provide — "[t]he costs of collection, including . . . reasonable attorney's fees actually incurred" shall be the personal obligation of a condominium unit owner. And, Section 10 (b) of the Declaration similarly provides that "reasonable attorney's fees actually incurred" shall be the personal obligation of a condominium unit owner.

[5] The trial court relied on OCGA § 44-3-109 (a), which provides that a condominium association can collect "[a]ll sums lawfully assessed by the association against any owner" and that any assessments are the personal obligation of the unit owner and constitute a lien in favor of the association.

5

late fees, and $10,603.29 in interest; therefore, the court granted partial summary judgment in favor of the Association in those amounts. Because the Association had proven that its lien exceeded $2,000, the court also ruled that the Association is entitled to an order of judicial foreclosure pursuant to OCGA § 44-3-109 (c). However, the court found that disputed issues of fact remain as to the reasonableness of the attorney fees claimed by the Association and therefore denied summary judgment on its claim for attorney fees and court costs. This appeal followed.[6]

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

---

[6] We note that the current record on appeal is unclear as to the status of Ballard's counterclaims, and we express no opinion on their present viability.

*JPMorgan Chase Bank, N.A.*, 355 Ga. App. at 558-559 (citation and punctuation omitted). And, "[w]here a party sues for damages, it has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty." *Hayek v. Chastain Park Condo. Assn.*, 329 Ga. App. 164, 167 (1) (764 SE2d 183) (2014) (citation and punctuation omitted). With these guiding principles in mind, we now turn to Ballard's claims of error.

Ballard contends that the trial court erred in granting summary judgment in favor of the Association because disputed issues of material fact remain as to her liability for delinquent assessments, late fees, and interest. While her brief is not a model of clarity, she essentially claims that the Association applied her payments to attorney fees and costs — which remain disputed — before it applied them to assessments and other charges; therefore, the trial court was unable to ascertain how much she owed for assessments and delinquency charges without first resolving the question of whether the attorney fees and costs claimed by the Association were reasonable, and if so, to what extent. We agree.

On the current record, it appears to be undisputed that each time Ballard was billed for attorney fees, her payments were applied first to those fees. Thus, to the

extent that any of the billed attorney fees were unreasonable, each application of a payment to such "unreasonable" fees — rather than to other charges — improperly increased Ballard's balance for all other charges, thereby resulting in additional late fees and interest (and, potentially, additional attorney fees, in a recurring cycle). Cf. *In re Jacobs*, 324 B.R. 402, 410 (III) (Bankr. N.D. Ga. 2005) (highlighting that a condominium association's decision to "plow forward with collection activity" may work to its disadvantage by making it more difficult for the debtor to pay properly assessed fees and that collection activity that disproportionately increases the amount of debt thus may become "ultimately self-defeating" by "turn[ing] a potentially solvable problem of relatively modest proportions into a huge and costly mess"). As a result, given the trial court's ruling that disputed issues of fact remain as to the reasonableness of the attorney fees claimed by the Association — a ruling the Association does not challenge on appeal — it necessarily follows that disputed issues of fact remain as to whether Ballard's recurring balance for all other charges was improperly inflated each time an attorney fee charge was assessed.

Contrary to the Association's argument, recalculation of Ballard's liability following a determination as to the amount of properly assessed attorney fees is not a simple matter of mathematics. It is a genuine issue of disputed fact that precludes

8

summary judgment. See *McGinnis v. Admiral Moving & Storage*, 223 Ga. App. 410, 411-412 (477 SE2d 841) (1996) (disputed facts preclude summary judgment); *Lawrence v. Gardner*, 154 Ga. App. 722, 724 (270 SE2d 9) (1980) ("Summary judgments should only be granted where, construing *all* inferences against the movant, it yet appears without dispute that the case can have but a single outcome.") (citation and punctuation omitted). The trial court therefore erred when it determined that no disputed issues of fact remain as to Ballard's liability for charges other than attorney fees.

And because disputed issues of fact remain as to Ballard's liability for all charges, the trial court also erred when it granted summary judgment on the Association's claim to foreclose on Ballard's lien, which is necessarily premised on the proposition that it is undisputed that Ballard owes at least $2,000 in properly calculated charges. We therefore reverse the trial court's grant of partial summary judgment in both respects and remand this case for resolution of the disputed issues of fact as to the reasonableness of the attorney fees claimed by the Association (and the impact of that calculation on Ballard's liability for other charges), which must be resolved before any determination can be made as to Ballard's liability for all other charges. That will require a determination, "for each stage of the representation, [of]

9

what legal services were reasonably necessary and justifiably incurred in an effort to accomplish the Association's proper objective of payment, taking into account the amount involved, reasonably anticipated results, and the extent to which [Ballard's] conduct made legal services necessary." *In re Jacobs*, 324 B.R. at 410-411 (III); see also id. at 411-413 (III) (conducting reasonableness analysis).

*Judgment reversed. Doyle, P. J., and Reese, J., concur*.